UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| ALLEN DONALD HANSON, | ) | |
|---|---|---|
| Plaintiff | ) ) ) | |
| v. | ) | 1:11-cv-00008-DBH |
| SOCIAL SECURITY ADMINISTRATION COMMISSIONER, | ) ) ) ) | |
| Defendant | ) ) | |

## REPORT AND RECOMMENDED DECISION

The Social Security Administration found that Allen Donald Hanson, a 59-year-old man with a heart condition, has the functional capacity to perform substantial gainful activity in occupations existing in significant numbers in the national economy, resulting in a denial of Hanson's application for disability insurance benefits under Title II of the Social Security Act. Hanson commenced this civil action to obtain judicial review of the final administrative decision. I recommend that the Court affirm the administrative decision.

### The Administrative Findings

The Commissioner's final decision is the November 19, 2010, decision of the Decision Review Board, which "found no reason" to disturb the decision of Administrative Law Judge John F. Edwards. The Commissioner rests, in effect, on the August 20, 2010, decision issued by Judge Edwards. Judge Edwards's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims. (Docs. Related to Admin. Process, Doc. No. 10-2, R. 1, 9-19.[1])

---

[1] The Commissioner has consecutively paginated the entire administrative record ("R."), which has been filed on the Court's electronic docket in a series of attachments to docket entry 10.

At step 1 of the sequential evaluation process, the Judge found that Hanson met the insured status requirements of Title II through December 31, 2007, and has not engaged in substantial gainful activity since January 23, 2006, the date of alleged onset of disability. (R. 11, Findings 1 & 2.) At step 2, the Judge found that Hanson has the following severe impairments: coronary artery disease post two-vessel aortocoronary bypass procedure (2006), history of angioplasty (1998), and obesity. (R. 11, Finding 3.) The Judge deemed non-severe a right shoulder condition acquired while playing softball in 2009. (R. 12.) At step 3, the Judge found that this combination of impairments would not meet or equal any listing in the Commissioner's Listing of Impairments, Appendix 1 to 20 C.F.R. Part 404, Subpart P, considering, in particular, listing 4.04, ischemic heart disease. (R. 12-13, Finding 4.)

Prior to further evaluation at steps 4 and 5, the Judge assessed Hanson's residual functional capacity. The Judge found that Hanson's combined impairments do not prevent him from performing the full range of light work, except for an inability to climb ramps, stairs, ladders, ropes and scaffolds more than occasionally. (R. 13, Finding 5.)

At step 4, the Judge found that this degree of limitation would prevent Hanson from returning to his past relevant work, all of which entailed medium or heavy exertion. (R. 17, Finding 6.) For purposes of the step 5 inquiry into Hanson's ability to perform other work, the record establishes that Hanson was born in 1952, has a bachelor's degree in social sciences, can communicate in English, and has acquired certain work skills from his past relevant work. (R. 17, Findings 7-9.) The Judge presented a vocational expert with this vocational profile and the residual functional capacity findings and found, based on the vocational expert's hearing testimony, that Hanson could engage in substantial gainful employment, including in occupations such as case aide, outside delivery/courier, and general office clerk. (R. 17-18,

Findings 9-10.) Consequently, the conclusion of the Commissioner is that Hanson has not been under a disability between the alleged onset date of January 23, 2006, through the date of decision. (R. 19, Finding 11.)

**Standard of Review**

The standard of review is whether substantial evidence supports the Commissioner's findings. 42 U.S.C. §§ 405(g), 1383(c)(3); Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996). So long as the Commissioner applied the correct legal standards and issued a decision supported by substantial evidence, the Court must affirm the administrative decision. This is so even if the record contains substantial evidence in support of an alternative assessment, as administrative records are wont to do. Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); Rodriguez Pagan v. Sec'y of HHS, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. Richardson v. Perales, 402 U.S. 389, 401 (1971); Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).

**Discussion of Plaintiff's Statement of Errors**

Hanson argues that the Judge erred in regard to assessing residual functional capacity by failing to account for a treatment provider's opinion that Hanson cannot stoop and by failing to perform a "function by function" analysis. (Statement of Errors at 19-23, Doc. No. 12.) Otherwise, Hanson's challenge is focused on the step 5 inquiry and the quality of the vocational expert's testimony concerning Hanson's ability to transition to other work in the national

economy. (Id. at 3-19.)

A.   *Residual Functional Capacity*

Prior to the step 4 and step 5 evaluations related to the claimant's ability to perform substantial gainful activity, the Commissioner must assess the claimant's residual functional capacity (RFC). RFC amounts to "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1). In general, the claimant is responsible for providing the medical evidence needed to make the RFC finding, though the Commissioner has an obligation to facilitate the development of the record, such as by arranging for consultative examinations, as needed, and referring the medical records for expert review and assessment. Id. §§ 404.1545(a)(3). It is well established that the Commissioner may assign greater weight to the opinions of his own experts than to those of treating physicians or examining consultants chosen or retained by the claimant if the record evidence supports such a determination. Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 276 (1st Cir. 1988) (per curiam). Such a decision must be upheld where a reasonable person could accept it as adequate. Rodriguez, 647 F.2d at 222.

Hanson argues that the Judge failed to conduct a "function by function" analysis, making it "impossible to determine whether the administrative law judge's assessment of residual functional capacity is supported by substantial evidence." (Statement of Errors at 20.) This argument is entirely conclusory in nature and is deemed undeveloped. A review of the Judge's decision reflects that he considered all of Hanson's alleged impairments in functioning. The Commissioner's regulations do not require more. See 20 C.F.R. §§ 404.1545(a)(4) (explaining that the Commissioner will "consider your ability to meet the physical, mental, sensory, and other requirements of work"); Social Security Ruling 96-8p, 1996 SSR Lexis 5, *2, 1996 WL

4

374184, *1 (explaining that a residual functional capacity assessment requires identification of a claimant's functional limitations and assessment of work-related abilities "on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945"). To the extent that Hanson is suggesting that an administrative law judge must discuss every physical and mental demand of work in the course of a decision, this is not supported by the regulations, by SSR 96-8p, or by any precedent of which I am aware. What the regulations indicate is that the Commissioner may satisfy the "function-by-function" inquiry by seeking one or more assessments of work functioning from qualified experts during the initial claims process. These assessments are commonly reported on forms that facilitate a "function-by-function" review. The regulations do not require the Commissioner to sift through every function when crafting an administrative decision, though it is to be expected that the specific functions that underlie an individual's claim will be addressed. Here, the Judge discussed each of Hanson's alleged impairments and considered its impact on work functioning. Additionally, his finding of a capacity for light exertion is supported by two "function-by-function," physical residual functional capacity assessments from consulting experts. (Exs. B11F, B14F.)

Hanson's more focused challenge to the residual functional capacity finding involves the Judge's failure to include a postural limitation that precludes stooping. Hanson argues that the Judge failed to consider this limitation even though it was included in a medical source statement offered by Eliza Currie, PA-C, and endorsed by Donald Blagdon, MD. (Ex. B24F, R. 774, 792, Doc. No. 10-17.) As it stands, however, the Judge discussed at length Hanson's ability to engage in physical exertion and pointedly addressed the medical source statement offered by Dr. Blagdon's practice at Kennebec Valley Health Center. Among other observations, the Judge indicated that "several treatment records from KVHC instruct the patient to increase his physical

activity in order to keep his weight under control [and] contain numerous references to activities that include walking, biking, kayaking, camping, volunteering and playing the organ at church." (R. 14.) The Judge also explained why he gave little weight to the practice's assessment of work functioning, stating that they were overblown and "highly inconsistent with the longitudinal record and the claimant's reported activities, as noted previously." (R. 16.) The "as noted previously" comment references approximately two pages of discussion related to the longitudinal record, a review of which could be regarded by a reasonable person as collecting persuasive evidence in support of the Judge's physical residual functional capacity finding. In addition, consulting experts who have reviewed the medical records have opined that Hanson can "frequently" engage in stooping activity. (Ex. 11F, R. 403; Ex. 14F, R. 541.)

The Commissioner's regulations state that controlling weight will be given to the opinion of a treatment provider, "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). The Judge's discussion of the record identifies substantial evidence in support of his residual functional capacity finding, including supportive expert opinion, and offers an acceptable explanation for the rejection of the KVHC treating source opinion. The Judge's rejection of the KVHC opinion is further supported by medical expert testimony from Peter Webber, MD, who also found the practice's more dire assessment unpersuasive in light of the treatment records. (R. 64-65.) A reasonable person could regard these multiple evidentiary sources as adequate to support the finding in question.

B.   *Vocational Expert Testimony*

At step 5, the burden shifts to the Commissioner to demonstrate that a significant number

6

of jobs exist in the national economy that the claimant could perform. 20 C.F.R. §§ 404.1520(g); Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); Goodermote v. Sec'y of HHS, 690 F.2d 5, 7 (1st Cir. 1982). Ordinarily, the Commissioner will seek to meet his step 5 burden "by relying on the testimony of a vocational expert" in response to the hypothetical question of whether a person with the claimant's residual functional capacity, age, education, and work experience would be able to perform other work existing in the national economy. Arocho v. Sec'y of HHS, 670 F.2d 374, 375 (1st Cir. 1982). In some cases, however, the question of whether a claimant can transition to other work is determined, in whole or in part, by comparing the claimant's residual functional capacity and vocational factors to standards set out in the Commissioner's Medical-Vocational Guidelines, Appendix 2 to 20 C.F.R. Part 404, Subpart P, § 200.00. In this particular case, the Guidelines proved relevant to the step 5 inquiry, but the Commissioner still relied on vocational expert testimony to satisfy his step 5 burden.

Varyingly referred to as "the Grid," "the Grids," or "Appendix 2," the Guidelines are rules adopted by the Social Security Administration to streamline the decision-making process when claimants meet certain functional and vocational profiles. Pursuant to the Guidelines: "Where the findings of fact made with respect to a particular individual's vocational factors and residual functional capacity coincide with all of the criteria of a particular rule, the rule directs a conclusion as to whether the individual is or is not disabled." Id. § 200.00(a) (emphasis added). The Guidelines include three easy-reference tables, or grids, to assist in their application. In this case, the applicable grid is table 2 and the relevant guideline section is section 202.00, which applies to claimants' whose maximum sustained work capability is limited to light-exertion work.[2] Section 202.00 indicates that Hanson's age (born in 1952) is a major factor that

---

[2] The Judge also found that Hanson cannot climb ramps, stairs, ladders, ropes and scaffolds more than occasionally. Thus, Hanson technically falls somewhere just shy of the "full range" of light work. It is presumably

7

"significantly limits vocational adaptability." Id. § 202.00(d). Hanson's alleged onset date of January 2006 corresponds with an age of 53, which is classified as "closely approaching advanced age." 20 C.F.R. § 404.1563(d). However, as of the date of the administrative law judge's August 2010 decision, Hanson was 58 years old, which is classified as "advanced age" in the regulations. Id. § 404.1563(e). For purposes of applying the Guidelines, Hanson should be classified as being of advanced age. Id. § 404.1563(b); Varley v. Sec'y of HHS, 820 F.2d 777, 780 (6th Cir. 1987) ("[T]he claimant's age as of the time of the decision governs in applying the regulations.").

Turning to table 2, it becomes clear that the Guidelines direct a finding of disabled unless Hanson either has education that provides for direct entry into skilled work or gained "skilled or semi-skilled skills" that are transferrable to other work. Appendix 2 § 202.04—202.07. The fact that the vocational expert identified one unskilled job that someone with Hanson's residual functional capacity could perform does not, standing alone, satisfy the Commissioner's step 5 burden here because the Guidelines direct otherwise. In effect, the Guidelines indicate that someone with Hanson's residual functional capacity, age and other vocational characteristics is not expected to make an adjustment to unskilled work. Social Security Ruling 83-10, 1983 SSR Lexis 30, *7, 1983 WL 31251, *3 ("[A]s shown in the table rules, individuals may not be expected to make a vocational adjustment to unskilled work in certain circumstances."). By operation of the Guidelines, Hanson is such an individual, and the Commissioner is required to identify substantial evidence in the record to meet either the "direct entry" or the transferable skills requirement.

For reasons that follow, the semiskilled occupation of "case aide" satisfies the

---

for this reason that his counsel references table 1, section 201.00. As it happens, however, both tables point to the same analysis in this case: whether Hanson has an education that allows for direct entry into a skilled occupation or acquired skills that are transferable to a skilled occupation. See Appendix 2 § 201.04—201.07.

8

Commissioner's burden at step 5 under the "direct entry" standard. Although the Court does not have to address the remaining issue concerning transferrable skills, I have outlined the issue for the Court's benefit.

1. <u>Direct entry into skilled work</u>

In his ninth finding, the Judge relied on vocational expert opinion that Hanson's completion of a bachelor's degree in social sciences, in 2005, would allow for direct entry into skilled work. (R. 17.) At the hearing, the vocational expert testified that Hanson's acquisition of a degree in the social sciences would enable Hanson to be a "case aide," a semiskilled occupation. (R. 77.) This was not contingent, in the vocational expert's view, on the existence of previously acquired skills. The vocational expert testified that education alone would permit this transition. However, the vocational expert did allow that previously acquired skills such as computer skills, phone skills, record keeping and report preparation would facilitate that transition. (Id.)

The Judge gave Hanson some leeway to question the vocational expert about direct entry into a case aide position. During this cross examination, the vocational expert testified that he was familiar with the bachelor's degree in social sciences, a degree that the vocational expert himself possessed, and that someone with this degree could obtain direct entry into semiskilled occupations in the social services field, including as a case aide. (R. 86-87.) Based on this testimony, the Judge found that Hanson could transition to working as a case aide. (R. 18.) According to the vocational expert, such jobs exist in substantial numbers in the national economy (roughly 114,000 jobs). (R. 77.) This is substantial evidence in support of the Commissioner's decision to find Hanson not disabled at step 5.

Hanson complains that his counsel's questioning was limited because, after being given

leeway to explore the transferrable skills issue (discussed below) and the bachelor's degree and case aide work, the Judge denied him additional leave to have the vocational expert describe "the process" that he went through as a vocational expert to determine whether Hanson's education would allow for direct entry into skilled work. (Statement of Errors at 18, referencing R. 87.) I do not find this argument persuasive. The vocational expert's testimony adequately explained his approach with regard to the bachelor's degree and his testimony appears reliable in that regard.

Lastly, Hanson argues that the case aide occupation does not count because it is semiskilled rather than skilled and the Guidelines call for evidence of an education that enables direct entry into "skilled" work. (Id. at 17-18.) This argument is contrary to the regulatory scheme, which includes within the skilled work category both skilled and semiskilled work. 20 C.F.R. § 404.1568; SSR 83-10, 1983 SSR Lexis 30, *6, 1983 WL 31251, *3 ("Ability to perform skilled or semiskilled work depends on the presence of acquired skills which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work."). Because Hanson's education allows for direct entry into a semiskilled occupation he is not disabled under the Guidelines. Additionally, there is substantial evidence in the record that the case aide occupation exists in substantial numbers in the national economy. Even when the Guidelines do not direct an outcome, the Commissioner need only identify a solitary job or occupation to satisfy his burden at step 5, 20 C.F.R. § 404.1566(b), and he has done so in this case with the case aide job.

2. Transferable skills

Skills acquired from past work can prove relevant to the step 5 inquiry when claimants

10

are of advanced age and can no longer perform their past work due to physical and/or mental impairment. The Commissioner's regulations recognized that skills are acquired in both semi-skilled occupations and skilled occupations. 20 C.F.R. § 404.1568(a)-(c). According to the regulations, the Commissioner will find that a claimant has transferable skills "when the skilled or semi-skilled work activities you did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work. This depends largely on the similarity of occupationally significant work activities among different jobs." 20 C.F.R. § 404.1568(d)(1). "Transferability is most probable and meaningful among jobs in which—(i) [t]he same of a lesser degree of skill is required; (ii) [t]he same or similar tools and machines are used; and (iii) [t]he same or similar raw materials, products, processes, or services are involved." Id. § 404.1568(d)(2). However, "[a] complete similarity of all three factors is not necessary for transferability." Id. § 404.1568(d)(3). When a claimant is of advanced age, is closely approaching age 60, and has a residual functional capacity for no more than light work, the Commissioner "will find that [the claimant has] skills that are transferable to skilled or semiskilled light work only if the light work is so similar to your previous work that you would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." Id. § 404.1568(d)(4). If such a claimant is of advanced age but is not yet closely approaching age 60, then the standard is the standard described in section 404.1568(d)(1)-(3).

Mr. Hanson has past relevant work as a cabinet maker, pipefitter and millwright, store clerk, and inspector[3]. (R. 74-75.) Asked to identify what skills would be acquired from this work, the vocational expert testified that he would set to the side the cabinet maker, pipe fitter,

---

[3] Hanson described his past inspector work as "nuclear mechanical structural ships systems inspector," an occupation he performed for roughly six years at the Portsmouth Naval Shipyard. (R. 41.)

11

and millwright occupations because the skills acquired are trade specific and would not readily transfer to other jobs. (R. 75.) He then testified that Hanson's other past work would have provided Hanson with some basic computer skills, record keeping skills, report writing/form completion skills, merchandise delivery skills, order taking skills, inventory tracking skills, basic customer service skills, phone skills, receptions skills, and basic office skills like filing. (R. 75-76.) According to the vocational expert, someone with these skills and Hanson's residual functional capacity would be able to transition to work as a file clerk or general office clerk, both classified as semiskilled occupations.[4] (R. 78.)

Hanson's counsel cross examined the vocational expert concerning the transferability of Hanson's skills. In the course of questioning, it was established that Hanson acquired the identified skills in occupations that are in "work fields" different from the work fields associated with general office clerk, file clerk, and case aide. (R. 80-84.) This line of inquiry was facilitated by counsel's reference to the Revised Handbook for Analyzing Jobs (R. 79), a Department of Labor publication that is not often cited in published judicial decisions addressing social security appeals, but which describes the methods and techniques used by those individuals and entities involved in occupational analysis. Counsel also asked the vocational expert to address whether there was a similarity in relation to the tools and machines used in these particular jobs. (R. 84.) The vocational expert responded that there would be similarity because the types of tools or machines in question were office machines and tools such as computers, files, record books and forms, and telephones. (R. 85.)

Hanson maintains:

> [I]t is clear that any skills acquired . . . while working as either a Stores Clerk or Inspector cannot be transferred to the proposed occupation of Case Aide because

---

[4] The vocational expert said that Hanson could also transition to unskilled work as an outside delivery person/courier. (R. 78.)

12

> the proposed occupation does not use the same or similar tools, machines, raw materials, products, processes or services as the past-relevant work from which the skills were acquired. Likewise, any skills acquired through the claimant's past relevant work cannot be transferred to the proposed occupations of File Clerk and Clerk, General because those occupations do not use the same or similar tools, machines and processes as the past-relevant work from which the skills were acquired.

(Statement of Errors at 14.) However, the Judge found that the vocational expert's testimony was sufficient to demonstrate that Hanson acquired skills as a store clerk and inspector that are transferrable to work as a general office clerk and file clerk.

This allegation of error raises a close question because the Judge made his decision when Hanson was 58 years old and Hanson's residual functional capacity falls a hair below the full range of light work due to the "occasional" restriction placed on ramps, ladders, stairs, and the like. This generates a dispute about which of the standards described in section 404.1568(d)(4) applied here. If it were obvious that the ordinary standard of subsections (d)(1) through (d)(3) applied, then I would say that the office clerk and file clerk occupations would supply additional, substantial evidence in support of the Commissioner's step 5 finding. Ultimately, however, this question does not require a resolution because the vocational expert's testimony about direct entry into the case aide job already supplies substantial evidence in support of the step 5 finding.

**Conclusion**

For the reasons set forth in the foregoing discussion, I RECOMMEND that the Court affirm the Commissioner's final decision and enter judgment in favor of the Commissioner.

NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

December 28, 2011